UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAITH STARK,

    Plaintiff,                                        Hon. Hala Y. Jarbou

v.                                                                         Case No. 1:23-cv-686

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of Social Security appeals, the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v.*

*Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 23 years of age on her alleged disability onset date. (PageID.53). Plaintiff successfully completed high school but has no past relevant work experience.

(*Id.*).   Plaintiff applied for benefits on May 18, 2021, alleging that she had been disabled November 5, 2018, due to complex regional pain syndrome and post-traumatic stress disorder (PTSD).   (PageID.31, 253).

Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).   Following an administrative hearing, ALJ Brian Burgtorf, in an opinion dated June 17, 2022, determined that Plaintiff did not qualify for disability benefits.   (PageID.31-84).   The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.   Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.   *See* 20 C.F.R. ¶¶ 404.1520(a-f), 416.920(a-f).   If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.   *See* 20 C.F.R. ¶¶ 404.1520(a), 416.920(a).   The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.   *See* 20 C.F.R. ¶¶ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate she is entitled to disability benefits and she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age,

education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from complex regional pain syndrome, depression, anxiety, and somatic symptom disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (PageID.34-38).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform sedentary work subject to the following limitations: (1) she requires the use of a handheld assistive device for ambulation and can carry small items in the contralateral upper extremity; (2) she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; (3) she can never climb ladders, ropes, or scaffolds; (4) she can never work around extreme cold, vibration, or hazards such as unprotected heights or unguarded/unprotected moving mechanical parts; (5) she can understand, remember, and carry out simple instructions; and (6) she can make simple work-related decisions.  (PageID.38-39).

The ALJ found that Plaintiff had no past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, his limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid.* In this case, a vocational expert testified that there existed approximately 385,000 jobs in the national economy which an individual with Plaintiff's RFC could perform. (PageID.78-79). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I.    Residual Functional Capacity

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff argues that she is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence.

On November 5, 2018, Plaintiff was involved in a motor vehicle accident. (PageID.343). Specifically, Plaintiff was a "restrained front seat passenger in a car that was rear-ended at a high rate of speed." (*Id.*). Plaintiff was taken to a hospital where she reported "some left posterior foot pain as well as neck pain and headache." (*Id.*). A physical examination revealed that Plaintiff's left Achille's tendon was "tender," but the results were otherwise unremarkable and Plaintiff was noted to be "ambulating in the department without difficulty on both feet and ankle." (PageID.343-44). A CT scan of Plaintiff's head was performed the results of which were "normal." (PageID.345). A CT scan of Plaintiff's cervical spine likewise revealed no abnormalities. (PageID.346).

Plaintiff subsequently reported experiencing "difficulty" with her left ankle. (PageID.317-24). X-rays of Plaintiff's ankle were negative and the results of an MRI were inconclusive. (PageID.324-25). Plaintiff was ultimately diagnosed with complex regional pain syndrome. (PageID.317-18, 415). As one doctor observed:

> [Plaintiff] has complex regional pain syndrome type 1 which means that she has sympathetic mediated pain of the left lower extremity mostly distally as a result of trauma without any specific nerve involvement. It appears to be a diffuse reaction to an injury. This has created autonomic overflow and thereby creating diffuse pain in the foot and ankle. This does seem to be directly correlated with her motor vehicle accident as this is all new after the accident.

(PageID.801).

Plaintiff participated in physical therapy from November 2019, through July 2021. (PageID.412-77, 985-1709). That Plaintiff's impairments cause pain and limitation is not in doubt. The ALJ's very restrictive RFC assessment

recognizes as much. As the ALJ also recognized, however, the record does not support the conclusion that Plaintiff is disabled.

Assessments by Plaintiff's care providers consistently produced results compatible with the ALJ's RFC assessment. (PageID.504, 551, 568, 571, 578, 629, 642, 658, 662, 685, 700, 714, 722, 725, 842, 881, 1230, 1679). Providers have noted Plaintiff's inconsistency in performing her prescribed home exercises and, moreover, have called into doubt the veracity of Plaintiff's subjective reports of pain as well as her motivation to participate in "more active" forms of treatment. (PageID.801, 1498, 1536). In March 2021, Plaintiff reported positive results from a recent change in her medications. (PageID.1467). In June 2021, Plaintiff reported that physical therapy had been beneficial enabling her to enjoy improved function and quality of life. (PageID.1545). In July 2021, Plaintiff was instructed to "increase her activity" level "including increased time on her feet walking." (PageID.896).

Likewise, with respect to Plaintiff's non-exertional impairments, the record amply supports the ALJ's RFC assessment. The results of mental status examinations did not reveal findings inconsistent with the ALJ's RFC assessment and Plaintiff's symptoms improved with medication. (PageID.390-404, 841-42, 879-81, 896-98, 909, 914, 927, 934, 1509, 1514, 1520, 1525, 1531-32, 1543, 1611, 1624, 1640, 1656-57, 1663-64, 1669-70, 1676, 1690).

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his

RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004).

This is what the ALJ in this matter did and the ALJ's RFC assessment is supported by substantial evidence. The ALJ *exhaustively* evaluated and discussed the medical record and clearly explained the basis for his assessments and conclusions. Plaintiff's argument is essentially that the ALJ should have weighed and evaluated the evidence differently. This is not grounds for relief, however. Accordingly, this argument is rejected.

**II.    Vocational Expert Testimony**

As noted above, the ALJ, based upon the testimony of a vocational expert, determined that there existed a significant number of jobs which Plaintiff could perform despite her limitations. Plaintiff argues that the ALJ improperly relied on the vocational expert's testimony.

At Step V of the sequential evaluation process, the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert so long as such questions accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs

which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed a significant number of such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 15, 2024        /s/ Phillip J. Green
                                               PHILLIP J. GREEN
                                               United States Magistrate Judge